IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

OMAR HANCE

Criminal No. ELH-13-0427
Civil No.:  ELH-15-2617

## MEMORANDUM

Omar Hance filed a post-conviction petition (ECF 79, the "Petition"), pursuant to 28 U.S.C. § 2255.  The Petition lacks merit and shall be denied.

### I.   Factual and Procedural Background

On August 14, 2013, a grand jury in the District of Maryland returned a two-count Indictment charging Omar Hance and a codefendant, Darrell Blackwell, with two instances of Hobbs Act Robbery on February7, 2013, as well as aiding and abetting, in violation of 18 U.S.C. § 1951 and § 2.  ECF 1.[1]  Willie Vinson was also a participant in the crimes.  However, he was not named in the Indictment.

Both robberies involved convenience stores.  A police chase ensued after the second robbery, which culminated in the apprehension of the three robbers.

Hance pled guilty to Count One of the indictment on May 16, 2014 (ECF 58), pursuant to a Plea Agreement.  *See* ECF 59; ECF 60.  Hance's plea of guilty was entered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties stipulated to a sentence of 110 months' imprisonment as the appropriate disposition of the case.  *See* ECF 59, ¶ 7.

---

[1] On September 2, 2014, Blackwell, who was the getaway driver, pled guilty to Count One, charging Hobbs Act Robbery.  ECF 70.

A Statement of Facts was appended to the Plea Agreement as Attachment A.  The parties agreed that the government would have proved these facts, beyond a reasonable doubt, if the case had proceeded to trial.  *See* ECF 59 at 10-12.  The Statement of Facts references the two robberies that are the subject of the Indictment, both of which occurred on February 7, 2013.   In addition, the Statement of Facts sets out thirteen other robberies that Hance, Blackwell, and Vinson committed between December 23, 2012, and January 20, 2013.  ECF 59 at 11.

Hance's sentencing was held on September 2, 2014.  ECF 70.  At that time, the Court sentenced Hance to the agreed upon term of 110 months' imprisonment.  ECF 70; ECF 71.  And, pursuant to ¶ 10 of the Plea Agreement, the Court ordered restitution of $4,308.90.  Hance did not note an appeal to the Fourth Circuit.

On September 3, 2015, Hance filed his Petition under 28 U.S.C. § 2255.  ECF 77.

In Hance's § 2255 Petition, in answer to form Question 11(H), as to why he did not appeal, Hance states:  "I request[ed] my attorney to file an appeal and was told to file a § 2255.  My attorney never removed himself from the case by way of an Andrea's [sic] Brief."  ECF 77 at 4.

Question 14 of the form asks the petitioner to set forth every ground in support of his Petition.  Hance alleges two grounds, both involving claims of ineffective assistance of counsel.  First, he asserts that his defense attorney was ineffective "for not challenging criminal history points."  *Id.* at 5.  Hance also asserts:  "Had counsel challenged them [*i.e.*, the criminal history points] he would of seen that the defendant was never charged with any of the offense's [sic] he took a plea for.  Also, the docket shows that counsel never filed a motion dealing with said prior convictions."  *Id.*

Second, Hance alleges that his lawyer was ineffective "for not challenging the dangerous weapon points." *Id.* He adds: "At no time did counsel file a motion or object to the charges dealing with a dangerous weapon." *Id.*

The government filed its response on November 10, 2015 ("Opposition," ECF 83), along with an Affidavit from the former Deputy Federal Public Defender who had represented Hance in this matter. *See* ECF 83-1. Hance's defense counsel averred in his Affidavit that he had advised Hance of his right to appeal. He claims that "Mr. Hance advised [him] he did not wish to file a notice of appeal." ECF 83-1. Mr. Hance did not file a reply.

Additional facts are included in the Discussion.

## II. Discussion

### A.

Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *See, e.g., United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Courts have determined that a hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225-26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

In reviewing Hance's Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard[ ]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same).  In my view, no hearing is necessary to resolve Hance's claims.

In paragraph 11 of the Plea Agreement, Hance waived his right to appeal, except to the extent that the sentence exceeded 110 months' incarceration.  Of course, a waiver of appellate rights does not preclude consideration of a claim for ineffective assistance of counsel for failure to heed instructions to note an appeal.  *See, e.g., Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *United States v. Brown*, 604 Fed. App'x. 281 (2015) (per curiam).  And, a court cannot resolve credibility disputes without a hearing.  But, this case does not involve a credibility dispute.  As the government points out, Hance does not seek relief because of his lawyer's alleged failure to note an appeal.  But, because Hance "mentioned this fact" in his submission (ECF 83 at 4), the government supplied the Affidavit of Hance's former defense counsel, disputing that assertion. *Id.*

I agree that Hance has not alleged ineffective assistance based on his lawyer's failure to note an appeal.  Therefore, no hearing is needed to resolve that issue.  Nor is a hearing needed to resolve the issues actually raised by Hance.

**B.**

Section 2255(a) of Title 28 of the United States Code, the statute under which Hance filed his Petition, provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack.

The scope of review of non-constitutional error is more limited than that of constitutional error. A non-constitutional error does not provide a basis for collateral attack unless it involves "a fundamental defect which inherently results in a complete miscarriage of justice" or is "inconsistent with the rudimentary demands of fair procedure." *Untied States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999).

As noted, Hance contends that his lawyer provided ineffective assistance of counsel. To challenge successfully a conviction or sentence under § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in the seminal case of *Strickland v. Washington*, 466 U.S. 668 (1984). *See, e.g., United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011) ("To succeed on a Sixth Amendment claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickland*."); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Gordon v. Braxton*, 780 F.3d 196, 200 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *Yarbrough v. Johnson*, 510 F.3d 327, 337 (4th Cir. 2008). *See generally Missouri v. Frye*, _____ U.S. _____, 132 S. Ct. 1399 (2012); *Laffer v. Cooper*, _____ U.S. _____, 132 S. Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

First, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688.  This is known as the "performance prong" of the test, which relates to professional competence.  In this regard, the petitioner must establish, by a preponderance of the evidence, that "'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'"  *Harrison v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

The performance prong is "'difficult'" to establish.  *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)).  "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Branker,* 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).  Indeed, "the *Strickland* standard must be applied with scrupulous care." *Harrington*, 562 U.S. at 105.

As to performance, the central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Id.* at 88 (quoting Strickland, 466 U.S. at 690).  The Supreme Court said in *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986): "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687.  To satisfy the "prejudice prong," a petitioner must

demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.*

As the Supreme Court said in *Padilla*, 559 U.S. at 371, "Surmounting *Strickland's* high bar is never an easy task." A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court need not address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because the petitioner must prove both prongs in order to prevail; failure to satisfy either prong is fatal to a petitioner's claim. *Fields v. Attorney Gen. of Maryland,* 956 F.2d 1290, 1297-99 (4th Cir. 1985). As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Thus, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

Of import here, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson,* 397 U.S. 749, 771 (1970). But, the prejudice prong of the *Strickland* test is slightly modified. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In *Hooper*, the Fourth Circuit described a defendant's burden in the context of a post-guilty plea claim of ineffective assistance of counsel and said, *id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)):

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant

"must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Accord Burket v. Angelone,* 208 F.3d 172, 189 (4th Cir. 2000); *Fields*, 956 F.2d at 1294–99.

In *Hill*, 474 U.S. 52, the Supreme Court explained that "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).   And, as noted, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

*Hooper*, 845 F.2d 471, also provides guidance. In that case, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder.  *Id.* at 472. However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea.  *Id.*  Hooper subsequently filed a habeas corpus petition, which the district court denied.   On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial.  *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty.  It was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time.  *Id.* at 475-76.  Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness

established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding.  *Id.*

United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005), is also relevant.  There, the Court said that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."  Thus, in evaluating a post-guilty plea claim of ineffective assistance, the defendant's sworn statements, affirming satisfaction with counsel, are binding on the defendant, absent "clear and convincing evidence to the contrary."  *Fields*, 956 F.2d at 1299. Moreover, the fact that a plea bargain is "favorable" to a defendant and that accepting it was "a reasonable and prudent decision" is itself evidence of "[t]he voluntary and intelligent" nature of the plea.  *Id.*

Here, Hance was placed under oath at his rearraignment on May 16, 2014.  *See* ECF 82 (Rearraignment Transcript) at 3.  He indicated that he was fully satisfied with the services of his lawyer.  *Id.* at 9.  He also indicated that he had reviewed the factual and advisory guidelines stipulations in his Plea Agreement (ECF 59) and that they were accurate.  ECF 82 at 10.

Paragraph 6(a) of the Plea Agreement (ECF 59) states, in part:  "The parties agree that the facts stated in Attachment A would establish that the Defendant committed the crime of Hobbs Act robbery as to all the stores listed therein, and the parties agree that all of the robberies involved the use of a dangerous weapon."  At the guilty plea proceeding, Hance expressly agreed to the content of Attachment A.  ECF 82 at 15.

Hance also agreed at the Rule 11 hearing that he committed Hobbs Act robbery as to fourteen other convenience stores, all listed in the Statement of Facts,[2] and that these robberies all involved the use of a dangerous weapon. ECF 82 at 15-16; *see also* ECF 59 at 11. The Court informed Hance that, according to Paragraph 6(a) of the Plea Agreement, the "parties agree that the Sentencing Guidelines level applicable to Count 1, to which [defendant] pled guilty, will be calculated as if [he] were convicted of all of the robberies mentioned in Attachment A." ECF 82 at 16.

In addition, the Court specifically reviewed with Hance every robbery set forth in the Plea Agreement. ECF 82 at 18-19. And, defendant acknowledged that he committed each of those robberies. *Id.* at 19. Therefore, under Paragraph 6(c) of the Plea Agreement, five levels were added to the offense level, pursuant to U.S.S.G. § 3D1.4. The parties also agreed that the offense level would be "adjusted upward 4 levels because a dangerous weapon was used . . . ." *Id.* In other words, the base offense level of 20 for each robbery was subject to a four level upward adjustment, pursuant to U.S.S.G. § 2B.3.1(b)(2). ECF 82 at 17. Again, the defendant indicated that he understood. *Id.* As a result, Hance had a combined base offense level of 29. *Id.* With three deductions for acceptance of responsibility, the final offense level was anticipated to be a 26. *See* ECF 59 at 5. In addition, the Court reviewed with the defendant that, pursuant to Paragraph 6(e) of the Plea Agreement, there was no agreement between Hance and the government as to the defendant's criminal history or his criminal history category. *See* ECF 82 at 20.

The government then presented a summary of the facts of the case. *See* ECF 82 at 38-42. In the factual summary, the government stated that in each robbery one of the robbers used a BB

---

[2] One of these robberies is the subject of Count Two of the Indictment.

gun to commit the robberies.  *Id.* at 41.  Hance expressly agreed with the accuracy of the government's summary of the facts.  *Id.* at 42.

In his Petition, Hance contends that his defense attorney was ineffective "for not challenging criminal history points."  ECF 77 at 5.  In particular, he claims that his lawyer "would have seen that the defendant was never charged with any of the offense's he took a plea for."  *Id.*  And, he complains that his "counsel never filed a motion dealing with said prior convictions."  There is no merit to this contention.

At sentencing, the Court determined that the final offense level was, in fact, 26.  *See* ECF 72.  It also reviewed with defendant and counsel the defendant's criminal history.  *See* ECF 81 (Sentencing Transcript) at 8-9.  In particular, the Court referred to ¶¶ 164, 165, and 167 of the Presentence Report (ECF 64), reflecting two prior convictions for second degree assault and a prior conviction for possession with intent to distribute CDS.  This totaled eight points.  In addition, the underlying offense was committed while the defendant was on probation for possession with intent to distribute CDS.  Therefore, two additional points were added.  The Court noted the total of ten criminal history points, and this established a criminal history category of V.  *Id.* at 8.  Both the government's attorney and defense counsel expressly indicated that the Court did not err in its calculation of the criminal history category or the criminal history points.  Notably, Hance has not particularized any ground of error with respect to the criminal history calculation.

Hance also claims that his lawyer was "ineffective for not challenging the dangerous weapon points."  ECF 77 at 5.  He complains that his attorney failed to "file a motion or object to the charges dealing with a dangerous weapon."

In reference to the robbery of the 7-11 Store on February 7, 2013, the Statement of Facts in the Plea Agreement specifically stated:  "Omar Hance pointed what appeared to be a black semi-automatic handgun at the cashier, demanding money."  ECF 59 at 10.  Another robbery followed a few minutes later, in the same area, involving a Royal Farms Store.  As to that robbery, the Statement of Facts stated, in part:  "Hance walked over to the register area, walked behind the counter and told the cashier to open the register.  He then pulled out a black handgun and placed it on the counter, telling Vinson to take the gun."  *Id.*  The weapon was recovered by law enforcement officers and determined to be a "BB gun."  *Id.*

With respect to the other robberies committed by Hance, which were included as related conduct, the prosecutor stated during the rearraignment that either Hance or Vinson "used a BB gun to commit the robbery.  With the other's prior agreement and knowledge."  ECF 82 at 41. As noted, Hance agreed with the government's summary of facts and agreed that he committed the crimes, as summarized by the government.  *Id.* at 42.

There is no basis for post-conviction relief with respect to Hance's use of a dangerous weapon. The Statement of Facts, with which Hance agreed, under oath, made clear that he was the one who used the BB gun during the robbery.[3]   And, Hance received the benefit of not having used an actual gun.

The maximum sentence provided by statute for the offense to which the defendant pled guilty is 20 years' imprisonment, a $250,000 fine, and a period of supervised release of 3 years.[4]

---

[3] Even if the Court determined that the BB gun was merely possessed, not used, in the course of the robbery, the government notes that the sentencing guideline range would have been reduced by one level, resulting in a guideline range of 100 to 125 months' incarceration.  ECF 83 at 9.  A sentence of 110 months was within that range.  In any event, there was no basis to reach such a conclusion.

[4] Of course, if defendant were convicted of multiple robberies, his exposure would have been 20 years per offense.

Based on an offense level of 26 and a criminal history category of V, the advisory guideline range called for a sentence of imprisonment of 110 to 137 months.  ECF 81 at 9.  The C Plea called for a sentence of 110 months' imprisonment.

As the government points out, the Court expressed grave concerns at sentencing as to the leniency of the C Plea.  *See* ECF 81 at 11-12; 22.  Among other things, the Court was aware that Hance committed fourteen robberies with a dangerous weapon.  Although the weapon turned out to be a BB gun, the Court remarked, rhetorically:  "But if you're a victim standing there looking at a BB gun, do you know if it's a BB gun?"  ECF 81 at 12.  The prosecutor responded, *id.*:  "No, you don't, your Honor.  But the law treats the sentences so much differently."  The prosecutor continued, *id.* at 13:  "The clerks don't know [if] it's a real gun or not.  But the statutes and the law treat them quite differently."  The Court responded:  "I still end up saying to myself the guidelines here are pretty generous, and the (c) plea at the bottom of the guidelines is generous."  *Id.* at 22.

In sum, Hance does not argue that, but for the alleged errors of his lawyer, he would not have pled guilty and would have proceeded to trial.  Nor are there any facts in the record to support such a finding.  I am amply satisfied that defense counsel was not deficient, either as to the defendant's criminal history computation or the dangerous weapon enhancement.  Indeed, defense counsel negotiated a sentence of less than ten years' imprisonment for fifteen robberies.

For all these reasons, I shall DENY the Petition.[5]   A Certificate of Appealability shall not issue.

---

[5] I again point out that, in his Petition, Hance asserts in answer to question 11(H) that he asked his lawyer to file an appeal and was told to file a § 2255.  ECF 77 at 4.  However, he did not include his lawyer's failure to note an appeal as a ground on which he seeks relief.  *See* ECF 77 at 5, ¶ 14.

An Order follows.


Date:  <u>January 29, 2016</u>                          <u>                    /s/                    </u>
                                        Ellen L. Hollander
                                        United States District Judge